

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT MCSPARRAN and LAURA ULRICH, Derivatively On Behalf of CAREER EDUCATION CORPORATION <br><br> Plaintiffs, <br><br> v. <br><br> JOHN M. LARSON, PATRICK K. PESCH, WALLACE O. LAUB, KEITH K. OGATA, DENNIS H. CHOOKASZIAN, ROBERT E. DOWDELL, THOMAS B. LALLY, NICK FLUGE, JACOB P. GRUVER, and TODD H. STEELE, <br><br> Defendants, <br> –and– <br><br> CAREER EDUCATION CORPORATION, a Delaware Corporation, <br><br> Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 04 C 0041 <br> (Consolidated with 04 C 4778) <br><br> Wayne R. Andersen <br> District Judge |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the defendants' motion to dismiss plaintiffs' verified shareholders' amended derivative complaint. For the reasons stated below, defendants' motion to dismiss with prejudice is granted..

## PROCEDURAL HISTORY

On January 5, 2004, plaintiff Scott McSparran filed a verified shareholder's derivative complaint on behalf of Career Education Corporation ("CEC") against every member of CEC's

Board of Directors and certain key officers, alleging breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and breach of fiduciary duties for insider selling and misappropriation of information. After this case was consolidated with *Ulrich v. Larson et. al, 04 C 4778*, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, plaintiffs filed a consolidated complaint.

On January 27, 2006, this court denied defendants' Rule 12(b)(6) motion to dismiss, concluding that plaintiffs had met their Rule 23.1 burden to plead with particularity their claims of demand futility. The court based much of this opinion on our reading of *In Re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 803 (7th Cir. 2001) ("*In Re Abbott Labs*"). On May 3, 2006, however, this court granted defendants' motion to reconsider, stating that its analysis under *In re Abbott Labs* was mistaken, and that demand futility arises only when a majority of the directors are interested in the outcome of the litigation. The complaint was dismissed. *McSparran v. Larson*, No. 2006 WL 2052057 at *5 (N.D. Ill. May 3, 2006).

Before the court now is Scott McSparran and Laura Ulrich's (hereinafter collectively "plaintiffs") Verified Shareholders' Amended Derivative Complaint ("Amended Complaint") on behalf of Career Education Corporation ("CEC"), which re-alleges claims of breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and breach of fiduciary duty for insider selling and misappropriation of information against all defendants. The Amended Complaint adds the claim of constructive fraud against all defendants and a claim of usurpation of corporate opportunity against defendants Larson, Pesch, Dowdell, Fluge, Grover, Lally, Laub, Ogata and Steele.

The court now considers defendants' motion to dismiss. The facts set forth herein are those alleged in the Amended Complaint, which we take as true, as we must in addressing a motion to dismiss. Much of plaintiffs' 138-page, 318-paragraph Amended Complaint contains allegations we need not analyze at this stage in the litigation. We reach the decision laid out below based solely on the facts alleged in the Amended Complaint.

## BACKGROUND

CEC is a provider of private, for-profit post secondary education, with 51 campuses located throughout the United States, Canada, France, the United Kingdom, and the United Arab Emirates. In addition to its physical locations, CEC maintains an on-line presence through its e-learning division, American InterContinental University-Online. While CEC is formally incorporated in Delaware, plaintiffs maintain that CEC is headquartered in this District, which is also where a significant portion of the alleged wrongs and transactions the plaintiffs set forth in the Amended Complaint occurred.

Plaintiffs allege that defendants violated their fiduciary duty by maintaining a continual and systematic "top-down" policy of wrongful conduct which resulted in millions of dollars in damages to CEC and a significantly diminished business reputation. The essence of plaintiffs' Amended Complaint is that defendants artificially inflated CEC's stock price so that they could sell their holdings of CEC's stock at a higher price than the true value of the company would warrant. The plaintiffs allege defendants engaged in various instances of improper conduct, including misrepresenting its business and financial performance, to implement this scheme. For example, according to the plaintiffs, one of defendants' misrepresentations was basing CEC's

performance on falsified student records designed to "increase reported graduation rates and enrollment rates, and to conceal problems that were threatening the accreditation of its schools." Plaintiffs claim defendants were aware of this practice by CEC schools. In the alternative, the plaintiffs plead that defendants should have known about the alleged fraud at CEC by virtue of their director and officer positions and therefore failed at fulfilling their oversight duties.

As in the original complaint, many of the plaintiffs' allegations are pled without reference to the specific time the alleged wrongs were perpetrated, the place they occurred, or the specific CEC employees engaged in the allegedly conspiratorial conduct. For example, the Amended Complaint states that "defendants' conduct is also under investigation by several federal and state agencies" but fails to name the federal or state agencies, provide any details about the investigations or even identify which defendants are under investigation. The Amended Complaint alleges that defendants Larson and Pesch received non-public information from "lower level employees," and that "senior CEC executives" communicated with "school representatives" about "efforts" required to achieve projected quarter ending levels, but fails to name the employees, executives or representatives, or when these events occurred. The Amended Complaint also contains allegations that pertain only to defendants Larson and Pesch, whom the plaintiffs claim "dominated and controlled Career Education by creating an atmosphere of deceit intended to conceal the Company's true financial condition."

As in the original complaint, the Amended Complaint also alleges that defendants sold significant stock holdings while CEC's stock was artificially inflated by the false numbers reported by CEC. The Amended Complaint lists the proceeds gained from each stock sale by individual defendants. According to the plaintiffs, defendants disposed of more than 2.9 million

4

shares of CEC stock for proceeds of more than $136 million. The Amended Complaint also reports the amount each defendant was paid for their services to CEC and, as in the original complaint, details the business relationships existing between CEC's CEO and Chairman of the Board, and each and every other member of CEC's Board of Directors. While CEC's CEO and Chairman of the Board unquestionably had some degree of control over the compensation of officers of CEC, the Amended Complaint, like the original complaint, does not allege other business relationships that would allow him to control the compensation of outside directors. Instead, the Amended Complaint details social and business relationships common in executive circles.

## DISCUSSION

Before the Court is a shareholder derivative complaint. A derivative action is brought by individual shareholders on behalf of a corporation. However, a hallmark of corporation law is that directors, rather than shareholders, manage the business affairs of the corporation. *See, e.g.,* 8 Del. C. §141(a) ("The business and affairs of a corporation organized under this chapter shall be managed by or under the direction of a board of directors except as may otherwise [be provided].") Derivative actions "impinge on the managerial freedom of directors. Hence, the [requirement that a plaintiff demand that a company's board of directors bring suit prior to initiating their own action on behalf of the company] . . . exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies and then to provide a safeguard against strike suits." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). Nevertheless, the requirement that a plaintiff pleading a derivative complaint must make a demand upon a corporation's board is excused

when such a demand would be futile. *Heineman v. Datapoint Corp.*, 611 A.2d 950, 952 (Del. 1992) ("Equity will not require a useless act" and thus when "demand upon the board would be 'futile,' the demand requirement will be excused.")

In determining the plaintiffs' pleading requirements we will follow the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *Jones v. General Electric Co.*, 87 F.3d 209, 211 (7th Cir.1996); *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir.1994). However, the normally liberal pleading standards of the Federal Rules of Civil Procedure are heightened in this case by Rule 23.1, which requires a plaintiff to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." FED. R. CIV. P. 23. 1. Pleading with particularity means that a plaintiff must include "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624,627 (7th Cir. 1990).

**Demand Futility**

Because CEC was incorporated under the laws of Delaware, we will apply Delaware law in determining whether plaintiffs are excused from making a demand upon CEC's Board of Directors prior to initiating a suit. (As noted previously, Illinois case law follows Delaware case

law in determining the proper tests for demand futility.) *In Re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 803 (7th Cir. 2001) ("*In Re Abbott Labs*"). The Supreme Court of Delaware created a two-part test for demand futility in *Aronson v. Lewis*. Under this test, we ask whether "a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgement." *Aronson*, 473 A.2d at 814. Plaintiffs assert two main grounds for demand futility: (i) the Board of Directors is dominated and controlled by CEC's CEO and Chairman of the Board; and (ii) a majority of the Board of Directors are interested in the outcome of this litigation because they face a substantial likelihood of liability for claims predicated on the fact their decisions were not protected by the business judgment rule. Given the allegations of the Amended Complaint, the two-part test laid out in *Aronson* is distilled in the present case into questions of independence and interest.

1. Independence of Directors

Delaware courts have noted that "[a]t bottom, the question of independence turns on whether a director is, *for any substantial reason,* incapable of making a decision with only the best interests of the corporation in mind. That is, the Supreme Court cases ultimately focus on impartiality and objectivity." *In re Oracle Corp. Derivative Litigation*, 824 A.2d 917, 938 (Del. Ch. 2003), quoting *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1232 (Del. Ch. 2001), *rev'd in part on other grounds,* 817 A.2d 149 (Del. 2002), *cert. denied,* 538 U.S. 1032, 123 S.Ct. 2076, 155 L.Ed.2d 1061 (2003) (emphasis in original). However, "neither mere

personal friendships alone, nor mere outside business relationships alone, are sufficient to raise a reasonable doubt regarding a director's independence." *Litt v. Wycoff,* No. 19083-NC, 2003 Del. Ch. LEXIS 23, 16 (Del. Ch. Mar. 25, 2003). Nor does the fact that directors receive directorial fees destroy their independence. *Grobow v. Perot,* 539 A.2d 180, 188 (Del.1988), *overruled on other grounds by Brehm,* 746 A.2d at 253-54; *see also White v. Panic,* 793 A.2d 356, 366 (Del. Ch. 2000) ("[T]he fact that each [director] is paid an annual retainer of $30,000 plus a fee of $1000 for each meeting attended and annual grants of stock options does not make them beholden to [the company's CEO].").

The Amended Complaint provides no substantial reason to question the independence of a majority of CEC's Board of Directors. Plaintiffs have again failed to make any allegations that outside directors have their salary set by any board member, or are otherwise financially dependent upon other directors. While most of the board members maintained social and business relationships with other board members, such relationships are *de rigueur* in today's executive circles; indeed, if these relationships destroyed a board member's independence, few boards would have any independent members. While certain directors are officers of CEC and therefore have their salaries set by other directors, thereby eliminating their independence, the majority of the directors remain independent. We need not analyze each individual director's independence, because plaintiffs' assertions that the outside directors (who make up the majority of the board) lack independence run contrary to Delaware law. No outside directors have their compensation controlled by, or are otherwise subject to a disqualifying influence with, inside directors.

8

## 2. Interest of Directors

In determining whether the defendants have an interest in the litigation that would render a demand upon them futile we look to whether the factual allegations in the Amended Complaint "create a reasonable doubt as to the disinterestedness of the directors at the time the Complaint was filed." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3rd Cir. 1992) (applying Delaware law). A reasonable doubt regarding a director's interest is raised when a corporate decision "will have a materially detrimental impact on a director, but not on the corporation or the stockholders." *Rales v. Balasband*, 634 A.2d 927, 936 (Del. 1993). If plaintiffs' Amended Complaint pleads facts that indicate a majority of CEC's Board of Directors face a "substantial likelihood" of personal liability, a demand upon the Board of Directors is futile. *Aronson*, 473 A.2d at 815.

Generally, board members are protected from individual liability by the business judgment rule, which provides a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respected by the courts." *Aronson*, 473 A.2d at 812. Nevertheless, individual liability for directors can result from two possible contexts: (i) such liability can "follow from a board decision that results in a loss because that decision was ill advised[,] 'negligent,'" or intentionally adverse to the best interests of the company; and (ii) that liability may "arise from an unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss." *In re Caremark International Inc. Derivative Litigation.* 698 A.2d 959, 964 (Del. Ch. 1996).

Despite an extensive collection of allegations about the actions of mostly unnamed employees of Career Education Corporation, there is a scarcity of specifically pled "actions" taken by the board in the instant case. Instead, as noted previously, the plaintiffs rely on the board's alleged failure to act in the face of allegations of wrongdoing by CEC employees. Therefore, we focus on the second part of the test laid out above, which establishes that a board's extreme indifference or failure to act may create individual liability for board members. *In re Caremark*, 698 A.2d at 970 ("a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards.")

The Amended Complaint pleads that the defendants improperly overvalued the company in order to raise the stock price and then sold their stock for a large profit. Although it is alleged that all but one of the defendants sold their stock, plaintiffs still fail to plead with particularity that a majority of CEC's Board of Directors face a substantial likelihood of personal liability for reasons other than their stock sale or generalized inferences about their roles as directors. As support for its allegations, the Amended Complaint makes much of additional investigations about CEC's board and lawsuits which have been filed since the original complaint. As noted previously, however, if the simple existence of a class action complaint and investigation by the SEC gave rise to the type of extreme indifference and failure to act that *Abbott* says creates enough of a likelihood of board member liability to justify a finding of demand futility, any board of any company with multiple operating units would constantly face liability. By the plaintiffs' own measure, CEC is a large corporation controlling more than 51 schools. The claims about

10

misconduct in the Amended Complaint simply fail to establish a systematic lack of board oversight. To allow these claims to give rise to demand futility would significantly diminish the protections of the demand requirement for all large corporations, which likely have several lawsuits and employee claims pending at any given time.

Plaintiffs' Amended Complaint contains two alternative allegations. Defendants were allegedly either active participants in a scheme to report false accounting of revenues and enrollment figures so that they could sell their holdings of CEC stock at inflated prices, or they failed to act in the face of evidence that should have prompted remedial measures. Either of these two scenarios could result in personal liability for the defendants. However, neither is established with the requisite level of particularity in the Amended Complaint.

Finally, as noted previously, even if plaintiffs pled with particularity certain allegations about a minority of the directors, the court need not consider the allegations because demand futility arises only when a majority of the directors are interested in the outcome of the litigation. Because the Amended Complaint fails to establish that a majority of CEC's directors face a substantial likelihood of personal liability, the plaintiffs cannot show demand futility, and the Amended Complaint must be dismissed.

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss plaintiffs' verified shareholders' amended derivative complaint [122] with prejudice is granted. This case is hereby terminated.

It is so ordered.

Wayne R. Andersen

District Judge

Dated: February 28, 2007